## GEORGE WEST INDEPENDENT SCHOOL DIST. v. BARTLETT.

### No. 2646.

Court of Civil Appeals of Texas. Eastland.

April 16, 1948.

Rehearing Denied June 11, 1948.

R. E. Schneider, Jr., of George West, for appellant.

Harry J. Schulz, of Three Rivers, for appellee.

GRAY, Justice.

In its brief, appellant makes the following statement of the nature and results of the case, which appellee concedes to be correct:

"This is a statutory condemnation proceeding instituted by George West Independent School District, Appellant, against M. G. Bartlett, Appellee. The proceeding was to condemn Lots 1, 2, 3 and 4 in Block 26 in the town of George West. Commis-

sioners were duly appointed and assessed damages in the amount of $2,000.00, from which the Appellee filed his objections and the case was tried before a jury in the County Court. The jury returned its verdict finding the four lots to be of the market value of $3,700.00. Within due time Appellant filed its motion for a new trial and filed an amended motion upon which a hearing was had. The order overruling Appellant's motion for a new trial was entered on May 2nd, 1947, to which order Appellant excepted and gave notice of appeal to this Honorable Court. Proper Appeal Bond was timely filed and an appeal was perfected and the record has been filed in this Honorable Court in due time and the case is before this Honorable Court for review."

In his answer, appellee alleged that he was also the owner of Lots 9 and 10, in Block 26; that they were contiguous to the lots sought to be condemned, and through condemnation of said Lots 1, 2, 3 and 4, said Lots 9 and 10 would be damaged in the sum of $2,000.00; and that Lots 1, 2, 3 and 4 had a market value of $1,000.00 each. He prayed that condemnation of said four lots be denied, and in the alternative if they be condemned, he recover $6,000.00. Appellee contended that all six of said lots constituted a single tract within the purview of the statutes and, therefore, the condemnation sought by plaintiff was as to a part of said single tract. On the other hand, plaintiff contended that Lots 9 and 10 constituted a tract separate and apart from Lots 1, 2, 3 and 4, and that the condemnation sought was of an entire tract. The main charge submitted only one issue, viz.: what is the market value of Lots 1, 2, 3 and 4. But the court also submitted defendant's requested Special Issue No. 1, inquiring as to the market value of Lots 9 and 10 before the taking, and Special Issue No. 2, as to the market value of Lots 9 and 10 after the taking. Plaintiff timely filed its objections to the submission of said requested special issues. The jury answered that the market value of Lots 1, 2, 3 and 4 was $3,700.00; that Lots 9 and 10 had a market value of $13,000.00 before the taking and $13,000.00 after the taking. Ap-

pellant alleges error in the giving of said requested special issues, which is countered by appellee.

In support of appellant's contention that the two groups of lots constituted separate and distinct tracts, it was shown that the two groups were separated by a fifteen foot alley open and being used; that defendant acquired Lots 9 and 10 about thirty years before and had used and occupied them during all of said interval; that Lots 1 and 2 were acquired by defendant in 1941, and Lots 3 and 4 in 1944; that the lots sought to be condemned were wholly unimproved and had never been used in connection with Lots 9 and 10, and were not necessary to the continued use of same. He relies further upon Vol. 29 § 140, Corpus Juris Secundum, page 982, which announces the rule as follows:

" 'To constitute a unity of property within the rule, there must be such a connection or relation of adaptation, convenience, and actual and permanent use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used. If the separate tracts of which a part of one is taken are not put to a joint use, they cannot be considered as one parcel in assessing damages to the lands not taken, * * *' "

The undisputed evidence showed that on Lots 9 and 10, there were a two-story business house and a garage. The first floor of said business house was used for the postoffice. Appellee's wife was, and for a number of years had been, the postmistress and was holding said position under the civil service rules, which meant an uninterrupted tenure. Appellee and wife used the upper story for living quarters. Appellee insists that all six of said lots constituted a single unit, relying mainly on the Supreme Court case of State v. Slater, 120 Tex. 431, 38 S. W.2d 1097, which holds that when an addition has been subdivided into blocks, then each such subdivision or block constitutes a "tract," although it may be subdivided into lots, and in that case, the lots owned therein, whether all or a part thereof, collectively constitute a "tract." He also cites the

case of Holt v. Wichita County Water Imp. Dist. No. 2, reported in Tex.Civ.App., 48 S.W.2d 527, 530, following said Slater case. The court said:

"The terms 'tract or lot' and 'piece or parcel of real property,' or 'piece or parcel of land,' means any contiguous quantity of land in the possession of, owned by, or recorded as the property of the same claimant, person or company."

■ The last two authorities were suits for the collection of delinquent taxes and foreclosure of the tax lien on land. While they may have some persuasive force, they are not necessarily binding as to the meaning of "tract or parcel" in condemnation proceedings. The statutes and ends sought are entirely different. Unity of ownership is common to both proceedings, but "joint use," and "such a connection or relation of adaptation, convenience, and actual and permanent use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used," is not involved in tax suits. Other differences might be noted. But since the jury found that Lots 9 and 10 were of the same value after the taking as before, it becomes unnecessary for us to decide the point as to what constitute the unit in condemnation proceedings, other than to say that the evidence negatived the element of "joint use" in this case. That seems to have been the view of the trial court in submitting the requested issues. But should it be admitted that it was error to give such requested special issues, in view of the jury answers, it was not such error as to justify a reversal of the case.

■ In the motion for new trial, appellant contended that the answer of the jury that said condemned lots were of the value of $3,700.00 was against the weight of the evidence. The evidence as to their value was conflicting. Several witnesses testified that in their opinion, said lots were of the market value of $1,000.00 each, or $4,000.00 for them all. Appellee testified that he had been offered and refused $1,000.00 for one of the lots. The jury was the judge as to the weight to be given to the testimony. It was a compromise verdict, which was permissible, and there was ample evidence to support it.

■ Appellants allege error in the refusal of the trial court to strike the testimony of certain witnesses for appellee. The motions to strike came after cross-examination. They were not very specific as to what particular part of the testimony was sought to be stricken. Qualification of a witness to testify as to the market value of land is largely within the discretion of the trial court. Due to the long acquaintance of said witnesses with the lots in controversy, as disclosed by their testimony, we cannot say that the trial court abused its discretion. 19 Tex. Jur., pages 217, 218, 235, 250, and authorities therein cited.

■■ Finally, appellant alleges misconduct of the jury in arriving at the valuation of said four lots at $3,700.00, his contention being that the jury really found a depreciation in value of Lots 9 and 10, by reason of the condemnation of said other lots and added such depreciation to the value of such other lots. Four of the six jurors were called and questioned by the attorneys for both parties. It was developed that the matter of depreciation in the market value of Lots 9 and 10 was discussed by the jurors in their deliberations, and rightly so. The court had submitted that very issue. Had he not so submitted it, such discussion would have constituted misconduct. The misconduct charged put in issue the good faith of the jurors, in that having answered that Lots 9 and 10 would suffer no depreciation, they then added $2,000.00 to the value of the other lots as depreciation to Lots 9 and 10. In response to said hearing, the trial court filed his findings of fact in which he exonerated the jury from any misconduct whatsoever. All of the jurors examined testified that $3,700.00 was the actual value agreed upon for the condemned lots, and none of them testified that such amount included any depreciation to Lots 9 and 10.

Had they attempted to testify otherwise, they could not have been heard to impeach their own verdict. Supported as it was by the evidence, said finding of the trial court is binding on this court.

The judgment of the trial court is affirmed.